UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA HITSMAN,

       Plaintiff,

v.

UNITED PAYMENT CENTER INC.,
MSM PORTFOLIO MANAGEMENT,
NPG ASSOCIATES, INC.,
MICHAEL STEVEN MARTINEZ, and
NATALY ESPERANZA MARTINEZ,

       Defendants.

_____/

<u>COMPLAINT</u>

**I.    Introduction**

1.      Plaintiff is a victim of credit identity theft, whose stolen personal and financial

information was used to create a counterfeit account and fake debt. Defendants are debt

collectors and credit identity thieves who acquired and used the stolen information and

counterfeit account to contact and falsely threaten Plaintiff with litigation and other adverse

consequences, and coerce the payment of money from Plaintiff.

2.      Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 *et seq.,* Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et*

*seq.*, Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251 *et seq.,*

and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*

3.      Defendants, along with other entities and individuals to be identified in discovery,

1

are involved in a large, elaborate, and ongoing scheme to contact consumers across the country and falsely threaten litigation and other adverse consequences unless the consumers pay money to Defendants to supposedly satisfy counterfeit, paid, or time-barred debts. Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

4.      These schemes are epidemic and are operated by thousands of entities located in and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina.

5.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015.

6.      On September 29, 2020, the "Federal Trade Commission, along with more than 50 federal and state law enforcement partners . . . announced a nationwide law enforcement and outreach initiative to protect consumers from phantom debt collection and abusive and threatening debt collection practices . . . [with two new FTC cases against companies that] were trying to collect debts they cannot legally collect or that a consumer does not owe – a practice known as phantom debt collection." See https://www.ftc.gov/news-events/press-releases/2020/09/ftc-state-federal-law-enforcement-partners-announce-nationwide.

7.      The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information. It is an express violation of the FDCPA to commit a crime in connection with the collection of any debt.

## II.      Jurisdiction

8.      The Court has subject matter jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331. The Court has supplemental jurisdiction regarding Plaintiff's state law claims under 28 U.S.C. § 1367. The Court has personal jurisdiction over each Defendant because each Defendant purposefully availed itself/himself/herself of the privilege of acting in Michigan, by contacting and threatening Plaintiff by telephone, email and letter, with actual knowledge that Plaintiff resided and was physically present in Michigan when each of those communications took place, and caused Plaintiff's injuries to occur in Michigan. Venue is proper in the Western District of Michigan because the communications were received and injuries occurred there.

## III.      Parties

9.      Plaintiff Debra Hitsman is an adult, natural person residing in Montcalm County, Michigan. Plaintiff is a "consumer" and "person" as the terms are defined and used in the FDCPA. Plaintiff is a "person" as the term is defined and used in the DPPA. Plaintiff is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

10.     Defendant United Payment Center Inc. ("UPC") is an active California corporation, registered December 11, 2014. The Statement of Information filed by UPC on January 11, 2022 with the Secretary of State for California states that the principal office of UPC is 13715 Frazier Street, Baldwin Park, California 91706, that the CEO of UPC is defendant Maria De La Luz Martinez, that the CFO and Registered Agent of UPC is defendant Michael Steven Martinez, and that the business of UPC is "Collection Agency." UPC actually conducts its credit identity theft and debt collection operation from at least two locations, one at 222 North Mount Avenue, Suites 213, 215, and/or 216, Upland, California 91786, and another at 31641 Auto Center Drive, Suite 1C, Lake Elsinore, California 92530. UPC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. UPC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. UPC is a "debt collector" as the term is defined and used in the FDCPA. UPC is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, UPC is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

11.     According to the City of Upland, California, UPC has held a business license (# 00919824) to conduct business at 222 North Mountain Avenue, Suite 215, Upland, California 91786, telephone number 909-608-7130.

12.     On April 28, 2020, UPC was approved by the Small Business Administration for a PPP Loan in the amount of $75,985.00 through Chino Commercial Bank, N.A., to retain jobs for 30 employees. The application to obtain the PPP loan submitted by UPC and defendant Michael Steven Martinez to the lender and federal government stated that UPC operates as a "Collection Agency," NAICS Code 561440.

13.     On September 16, 2019, defendant Michael Steven Martinez registered through

GoDaddy.com, LLC, the internet domain www.unitedpaymentcenter.com, which links to an
active website that describes UPC as "the premiere professional accounts receivable management
firm in Southern California," doing business at 222 North Mountain Avenue, Suite 215, Upland,
California 91786, telephone numbers 909-608-7130 and 888-454-5924, and email address
administration@unitedpaymentcenter.com.

14.     On June 28, 2019, the Internal Revenue Service filed with the California Secretary
of State, a Notice of Federal Tax Lien against UPC, 222 North Mountain Avenue, Suite 215,
Upland, California 91786, in the amount of $298,173.55.

15.     UPC through its employees and agents directly and indirectly participated in the
efforts to collect an alleged debt from Plaintiff that are described in this complaint.

16.     UPC through its employees and agents directly and indirectly participated in the
acquisition, disclosure and use of Plaintiff's private, personal, financial and account information,
for an impermissible purpose, as described in this complaint.

17.     Defendant MSM Portfolio Management ("MSMPM") is an active California
corporation, registered August 3, 2021. The Statement of Information filed November 27, 2023
on behalf MSMPM with the Secretary of State for California states that MSMPM is a
"Collection Agency," doing business at 222 North Mountain Avenue, Suite 215, Upland,
California 91786, that defendant Michael Steven Martinez is the CEO, CFO and Director, that
defendant Nataly Esperanza Martinez is the Secretary and Director, and that Carmen Hernandez,
1180 East Philadelphia Street, Unit #12, Pomona, California 91766 is the Registered Agent.
MSMPM uses interstate commerce and the mails in a business the principal purpose of which is
the collection of debts. MSMPM regularly collects or attempts to collect, directly or indirectly,
debts owed or due or asserted to be owed or due another. MSMPM is a "debt collector" as the

term is defined and used in the FDCPA. MSMPM is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, MSMPM is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

18.     On March 22, 2022, Mr. Martinez filed with the Clerk of San Bernardino County, California, a Fictitious Business Name Statement (No. 20220002527), registering MSM Portfolio Management to conduct business using the fictitious business name "Dataskip," at 222 North Mountain Avenue, Suite 109B, Upland, California 91786.

19.     On January 13, 2022, Mr. Martinez registered through Godaddy.com, LLC, the internet domain www.DataSkip.io, which links to an active website that describes DataSkip as "the best Skip Tracing Company around," providing consumers' "Best 3 Phone #'s," from "REAL TIME CREDIT BUREAU DATA!" obtained by DataSkip from Equifax, Transunion and Experian. The website does not provide a business address, but does provide the contact telephone number 866-458-2932 and email address support@dataskip.io.

20.     On November 9, 2023, Mr. Martinez filed with the Clerk of San Bernardino County, California, a Fictitious Business Name Statement (No. 20230011292), registering MSM Portfolio Management to conduct business using the fictitious business name "MPM Processing," at 222 North Mountain Avenue, Suite 215, Upland, California 91786.

21.     On December 13, 2023, Mr. Martinez filed with the Clerk of San Bernardino County, California, a Fictitious Business Name Statement (No. 20230012266), registering MSM Portfolio Management to conduct business using the fictitious business name "J&M Automation," at 222 North Mountain Avenue, Upland, California 91786.

22.     On January 31, 2022, Mr. Martinez registered through Godaddy.com, LLC, the internet domain www.msmportfoliomanagement.com, which links to an active website that

describes MSM Portfolio Management as a "Debt Collector," doing business at 222 North

Mountain Avenue, Suite 213, Upland, California 91786, telephone number 888-698-3072, and

email address administration@msmportfoliomanagement.com.

23.     On August 24, 2022, Mr. Martinez registered through GoDaddy.com, LLC, the

internet domain www.corporatelegalgroup.com, which is used by defendants to communicate by

email with their victims, using the email address clientservices@corporatelegalgroup.com.

24.     On February 7, 2023, Mr. Martinez registered through Godaddy.com, LLC, the

internet domain www.legaldocsfiling.com, which is used by defendants to communicate by email

with their victims, using the email address admin@legaldocsfiling.com.

25     On March 31, 2023, Mr. Martinez registered through Gname 001 Inc., located in

Singapore, the internet domain www.legalprofiling.com, which is used by defendants to

communicate by email with their victims, using the email address

clientservices@legalprofiling.com.

26.     On September 1, 2023, Mr. Martinez registered through Godaddy.com, LLC, the

internet domain www.capitalassetgrp.com , which is used by defendants to communicate be

email with their victims, using the email address clientservices@capitalassetgrp.com.

27.     On January 2, 2024, Mr. Martinez registered through Godaddy.com, LLC, the

internet domain www.mpmprocessing.com, which links to an active website that describes MSM

Portfolio Management, doing business as MPM Processing, as a debt collector that "help[s]

recover lost payments and profits." The website links to a page captioned "Consumer

Protections," which discusses the FDCPA, and advises consumers whose rights have been

violated to consult with an attorney "to see if you have grounds for a lawsuit against the

collector." The website links to a portal for consumers to make payments to defendants, by debit

cards and credit cards, via the internet. The website does not provide a business address, but does provide the contact telephone number 844-262-9665.

28.     MSMPM through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Plaintiff that are described in this complaint.

29.     MSMPM through its employees and agents directly and indirectly participated in the acquisition, disclosure and use of Plaintiff's private, personal, financial and account information, for an impermissible purpose, as described in this complaint.

30.     Defendant NPG Associates, Inc. ("NPG"), FEIN 93-170xxxx, is an active California corporation, incorporated on or about May 26, 2023. The Statement of Information filed June 27, 2023 on behalf NPG with the Secretary of State for California states that NPG is in the business of "Debt Collection," with its Principal Office at 222 North Mountain Avenue, Suite 109B, Upland, California 91786, that defendant Michael Steven Martinez is the CEO, CFO and Secretary, and that the Registered Agent is Joshua R. Engle, 333 City Boulevard West, Suite 1700, Orange, California 92868. NPG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. NPG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. NPG is a "debt collector" as the term is defined and used in the FDCPA. NPG is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, NPG is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

31.     Mr. Martinez has registered NPG to do business as a debt collector in multiple states, including: Alabama; Delaware; Florida; Louisiana; Minnesota; New York; Ohio; and West Virginia. The documents filed by Mr. Martinez in the various states all recite that the Principal address for NPG's debt collection operation is 2401 E. Katella Avenue, Suite 445,

Anaheim, California 92806.

32.     On May 26, 2023, Mr. Martinez registered through Godaddy.com, LLC, the

internet domain www.npgassociates.com, which links to an active website that describes NPG as

a collection agency, with three founders with more than twenty-years of combined experience in

debt collection. The website states that defendants collected $20,000,000.00 in consumer debt in

2023, and have aspirations of collecting $125,000,000.00 in consumer debt in the near future.

The website claims that NPG does business at 3990 Concours Street, Ontario, California 91764,

and provides the telephone numbers 888-725-5475 and 714-602-6752 (fax), and email addresses

info@npgassociates.com and recruiter@npgassociates.com.

33.     Defendants are openly engaged in the unauthorized practice of law, a felony in

California and Michigan. Mr. Martinez maintains an active Facebook page for NPG at

https://www.facebook.com/search/top/?q=npg%20associates. The Facebook page falsely and

unlawfully states that NPG provides "litigation services for accounts identified as suit-worthy

during the collection process" and "assures that recommended legal accounts approved by the

client are pursued with diligence." The Facebook page unlawfully pledges that "all legal fees,

including court costs and attorney fees, will be covered upfront by NPG Associates." The

Facebook page falsely states: "The legal recovery method employed by NPG Associates boasts

an impressive average success rate of 80%, providing clients with a high probability of

successful debt recover through legal means." A screenshot of the quoted language from the

NPG Facebook page is attached to this Complaint as Exhibit A.

34.     NPG through its employees and agents directly and indirectly participated in the

efforts to collect an alleged debt from Plaintiff that are described in this complaint.

35.    NPG through its employees and agents directly and indirectly participated in the acquisition, disclosure and use of Plaintiff's private, personal, financial and account information, for an impermissible purpose, as described in this complaint.

36.    Defendant Michael Steven Martinez is a natural person, age 40, purportedly residing at 12150 Casper Court, Rancho Cucamonga, California 91739. Mr. Martinez is the husband of defendant Nataly Esperanza Martinez. Mr. Martinez is an owner, director, officer, manager, employee and agent of UPC, MSMPM and NPG. Mr. Martinez uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Martinez regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Martinez is a "debt collector" as the term is defined and used in the FDCPA. Mr. Martinez is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Martinez is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

37.    Mr. Martinez also maintains a residence at 26853 North 77th Street, Scottsdale, Arizona 85266. The property is titled in the name of the "absentee owner," MSM Portfolio Management, 222 North Mountain Avenue, Suite 109B, Upland, California 91786, which is a business office maintained by Mr. Martinez, located one floor below the office suites used by Mr. Martinez, UPC, MSMPM and NPG,  for one of their debt collection call centers.

38.    On January 10, 2017, Mr. Martinez filed with the Clerk of San Bernardino County, California, a Fictitious Business Name Statement (No. 20170000320), registering Mr. Martinez to conduct business using the fictitious business name "MSM Portfolio Management," at 222 North Mountain Avenue, Suite 213, Upland, California 91786.

39.     Mr. Martinez maintains an internet profile at www.facebook.com, where Mr. Martinez states that his business focus is "collections" and claims in 2023 to have collected $18,500,000.00 from consumers, at a rate of $3-5 million dollars per month.

40.     On May 3, 2024, Mr. Martinez posted a promotional/motivational video on his Facebook page, filmed on one of the floors of his debt collection operation. In the video, Mr. Martinez announces a "Sales Partnership Program," by which anyone who refers collection accounts to Mr. Martinez and NPG will receive 5% of the money collected from consumers. Mr. Martinez falsely states in the video that NPG reports derogatory credit information regarding consumers to all three of the major consumer reporting agencies.

41.     Mr. Martinez maintains an internet website that describes Mr. Martinez as "a successful Serial Entrepreneur who started his first Debt Collection Agency in 2012. With a strong sales and debt collection background was able to scale to 5 offices and 1.5 million in consistent monthly revenue employing over 100 employees within 10 years." The website links to another website captioned "Empire Cooperative," that contains a portal for individuals to apply for jobs as debt collectors working for Mr. Martinez and his companies.

42.     Mr. Martinez (a) created the collection policies and procedures used by UPC, MSMPM and NPG, and their employees and agents, in connection with their efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of UPC, MSMPM and NPG, (c) oversaw the application of the collection policies and procedures used by UPC, MSMPM and NPG, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by all defendants, and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an

alleged debt from Plaintiff as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by UPC, MSMPM and NPG, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by UPC, MSMPM and NPG, and their employees and agents, in connection with their common efforts to collect an alleged debt from Plaintiff as stated in this complaint.

43.     Mr. Martinez directly and indirectly participated in the efforts to collect an alleged debt from Plaintiff that are described in this complaint.

44.     Mr. Martinez directly and indirectly participated in the acquisition, disclosure and use of Plaintiff's private, personal, financial and account information, without a permissible purpose, as described in this complaint.

45.     Defendant Nataly Esperanza Martinez is a natural person, age 39 purportedly residing at 12150 Casper Court, Rancho Cucamonga, California 91739. Ms. Martinez is the wife of defendant Michael Steven Martinez. Ms. Martinez is an owner, director, officer, manager, employee and agent of UPC, MSMPM and NPG. Ms. Martinez uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Martinez regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Martinez is a "debt collector" as the term is defined and used in the FDCPA. Ms. Martinez is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. Martinez is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

46.     Ms. Martinez also maintains a residence at 26853 North 77th Street, Scottsdale,

Arizona 85266. The property is titled in the name of the "absentee owner," MSM Portfolio

Management, 222 North Mountain Avenue, Suite 109B, Upland, California 91786, which is a

business office maintained by Ms. Martinez, located one floor below the office suites used by

Ms. Martinez, Mr. Martinez, UPC and MSMPM,  for one of their debt collection call centers.

47.     Mr. Martinez has posted numerous times on Facebook and other internet sites that

Ms. Martinez is actively involved in the operation and management of defendants' debt

collection operation.

48.     Ms. Martinez (a) created the collection policies and procedures used by UPC,

MSMPM and NPG, and their employees and agents, in connection with their efforts to collect

consumer debts, (b) managed or otherwise controlled the daily collection operations of UPC,

MSMPM and NPG, (c) oversaw the application of the collection policies and procedures used by

UPC, MSMPM and NPG, and their employees and agents, (d) drafted, created, approved and

ratified the tactics and scripts used by all defendants, and their employees and agents, to collect

debts from consumers, including the tactics and scripts that were used to attempt to collect an

alleged debt from Plaintiff as stated in this complaint, (e) ratified the unlawful debt collection

practices and procedures used by UPC, MSMPM and NPG, and their employees and agents, in

connection with their common efforts to collect consumer debts, and (f) had knowledge of,

approved, participated in, and ratified the unlawful debt collection practices used by UPC,

MSMPM and NPG, and their employees and agents, in connection with their common efforts to

collect an alleged debt from Plaintiff as stated in this complaint.

49.     Ms. Martinez directly and indirectly participated in the efforts to collect an alleged

debt from Plaintiff that are described in this complaint.

50.     Ms. Martinez directly and indirectly participated in the acquisition, disclosure and use of Plaintiff's private, personal, financial and account information, without a permissible purpose, as described in this complaint.

51.     UPC, MSMPM, NPG, Mr. Martinez and Ms. Martinez own, control and use a merchant account, established in the name of "MPM Processing," telephone number 844-262-9665, with an Upland, California address, to receive credit card and debit card payments from defendants' victims. Money deposited in the merchant account is shared among and distributed to the defendants named in this lawsuit, their employees and agents, and perhaps others. The application filed by defendants with the ISO and Acquiring Bank to create the merchant account, as well as the related monthly account statements and other account records will need to be obtained via subpoena in discovery from the ISO and Acquiring Bank, so that Plaintiff can identify the other entities that receive distributions of money from the merchant account.

52.     UPC, MSMPM, NPG, Mr. Martinez and Ms. Martinez, and their employees and agents, use multiple telephone numbers in connection with defendants' credit identity theft and debt collection scam, including: 213-329-3258; 269-206-5817; 517-500-0436; 844-262-9665; 866-283-0645; 909-608-7130; and 989-206-9285.

53.     Defendants and their employees and agents, in efforts to conceal their identities and falsely claim to be a law firm, have operated their debt collection and credit identity theft scam using various unregistered aliases. Unregistered aliases currently used by defendants include: Law Firm of Vandenberg & Associates; Hersch & Associates; Law Firm of Hersch & Associates; and Arbitration Department.

54.     On March 30, 2023, in the case of *Brian Kelly v. United Payment Center, Inc.,* filed in the United States District Court, District of Minnesota, Case No. 0:22-cv-01799-ECT-JFD, Mr. Martinez testified, under oath, that defendants' business model is as follows: Mr. Martinez through UPC and MSMPM, purchases each month, approximately 15,000 allegedly delinquent consumer accounts. The accounts are assigned for collection to individual collectors, working in office space rented by Mr. Martinez at 222 North Mountain Avenue, Upland, California 91786. UPC provides each collector with a cubicle, chair, computer, telephone, and access to account information through UPC's debt collection software, Simplicity Collect. Money collected from consumers is deposited in defendants' merchant account. Each individual collector is paid a commission of one-third of the amount collected by the individual collector. The remaining two-thirds of the amount collected is paid to Mr. Martinez, Ms. Martinez, and their companies. None of the defendants are licensed to collect debts as required by California law, or in any other state. Defendants have never filed a lawsuit against any consumer in any state to collect any debt. Defendants have never employed or otherwise retained any attorney in connection with defendants' debt collection operation.

55.     Plaintiff is proceeding against defendants collectively under multiple theories, including a common enterprise theory, by which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a "maze of interrelated companies," exists, courts consider "the pattern and framework of the whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745, 746 (2d Cir. 1964). Although no one factor is controlling, relevant factors include whether the

15

corporate defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at 469 (citation omitted); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011 WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011). Further, a common enterprise analysis is neither an alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. *F.T.C. v Wyndham Worldwide Corp.*, No. 13-1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing *F.T.C. v. Direct Benefits Grp.*, No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

56. All defendants are intricately bound together and combine their efforts in a joint and common enterprise, using concerted efforts to collect debts allegedly owed by consumers throughout the United States. Defendants operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each defendant jointly and severally for the unlawful acts of each defendant.

57. Defendants operate as a single entity, commonly owned, operated and managed, operating from shared office space, sharing the same staff, equipment, computers, software, supplies and telephonic services, and commingling revenue, expenses and payroll.

58. An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th

16

Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL

1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

59.      A shareholder, owner, officer, member, manager, employee or agent of a

corporate debt collector can be held liable for violating the FDCPA, without piercing the

corporate veil, by being directly involved in the day-to-day operation of the company, including

the training and managing of employees, reviewing or supervising the review of accounts,

materially participating in the activities of the company, supervising collection activities,

overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for

the reason that each such individual is himself a "debt collector" within the statutory definition,

namely, each is a "person" in a business, "the principal purpose of which is the collection of any

debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of*

*Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth*

*Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.    Facts**

60.      On or about January 31, 2006, plaintiff Debra Hitsman and her husband Jack

Hitsman obtained a loan from CitiFinancial Auto ("CitiFinancial") to purchase a Ford Econoline

motor vehicle for personal, family and household purposes. CitiFinancial assigned the account

the number 1022627729. Any resulting obligation to pay money was a "debt" as the term is

defined and used in the FDCPA, MRCPA and MOC.

61.      Plaintiff used the motor vehicle exclusively for personal, family and household

purposes, such as transporting her children to and from school and other activities, grocery

shopping, visiting friends and relatives, and other personal activities and chores.

62.     In 2010, Plaintiff's husband became seriously ill, unable to work, and disabled. Plaintiff and her husband fell behind on their monthly payments to CitiFinancial. Plaintiff's account went into default. Plaintiff and her husband have not made a payment on the account since 2010.

63.     On or about August 15, 2010, CitiFinancial repossessed the vehicle from Plaintiff.

64.     By letter dated September 6, 2010, CitiFinancial notified Plaintiff that her delinquent account and related debt had been assigned to Santander Consumer USA Inc. ("Santander"). The letter also stated that Santander had assigned the account a new account number, 2615411, also sometimes known as account number 300001*2615411*1000.

65.     In September 2010, Santander sold the vehicle at auction for approximately $8,600.00. Santander applied the proceeds to the account balance of approximately $13,000.00, leaving Plaintiff owing Santander an alleged deficiency balance of $5,474.87.

66.     However, Santander failed to send Plaintiff a timely and proper notice of sale of the intended sale of the vehicle prior to the sale of the motor vehicle as required by the Uniform Commercial Code as enacted in Michigan. MCL 440.9610; MCL 440.9611; MCL 440.9612; MCL 440.9613; and MCL 440.9614.

67.     Because Santander failed to comply with the notice requirements of MCL 440.9613 and MCL 440.9614, Santander became "absolutely barred" from collecting any deficiency balance related to the sale of the repossessed motor vehicle.  *State Bank of Standish v. Keysor,* 166 Mich App 93 (1988); *Honor State Bank v. Timber Wolf Constr. Co.,* 151 Mich App 681 (1986). By operation of law, any debt that Plaintiff may have owed on the vehicle was

satisfied in full by the money received by Santander for the sale of the vehicle, leaving Plaintiff
with an account balance of zero.

68.     Regardless, and apart from Santander's violations of the UCC, any claim that
Santander may have had against Plaintiff in connection with the account became time-barred and
judicially unenforceable in 2014 by operation of the four-year statute of limitations found in the
Michigan UCC, MCL 440.2725. *See Harden v. Autovest, L.L.C.,* No. 1:15-cv-34, 2015 WL
4583276, *2-5 (W.D. Mich. July 29, 2015).

69.     Plaintiff disputes owing any money to CitiFinancial, Santander, or anyone else in
connection with the account.

70.     Plaintiff expressly refuses to pay any money to CitiFinancial, Santander, or
anyone else in connection with the account.

71.     In 2014, Santander offered to sell to multiple parties, more than 100,000
delinquent automobile loan accounts. As part of that process, Santander provided substantial
information regarding the accounts to multiple, prospective purchasers and brokers for
evaluation. The prospective purchasers and brokers signed non-disclosure agreements for all
accounts that were not purchased from Santander.

72.     Between July 25, 2014 and June 9, 2015, Santander sold more than 100,000
delinquent automobile loan accounts to non-party Cascade Capital, LLC ("Cascade"), a
California limited liability company. Plaintiff's account was included in the sale from Santander
to Cascade.

73.     Unbeknownst to Cascade, one or more of the prospective purchasers or brokers
that had received and reviewed account information from Santander, retained and stole the

information for more than 100,000 Santander accounts, including information regarding Plaintiff's account.

74.     Thereafter, non-party D'Juan Dale Leverette obtained the stolen personal and account information for more than 100,000 Santander accounts, including the stolen personal and account information regarding Plaintiff's account.

75.     From May 2017 to the present, Mr. Leverette has repeatedly sold and resold Plaintiff's stolen personal and account information to multiple scam operators across the country, who have used the stolen personal and account information to periodically contact Plaintiff and her relatives and friends, and falsely threaten Plaintiff with prosecution, litigation and other adverse consequences, in efforts to extort the payment of money from Plaintiff.

76.     In May 2017, Plaintiff's attorney contacted Cascade regarding the account. Cascade asserted that: (a) Cascade was the lawful and sole owner of Plaintiff's account; (b) Cascade has suspended all efforts to collect the account; (c) the account information has been stolen and compromised; (d) no one is authorized to collect the account; and (e) multiple consumers had contacted Cascade and complained that they were being contacted and falsely threatened with arrest, prosecution, litigation and other adverse consequences, unless the consumers paid money to the scam callers to supposedly satisfy the stolen accounts that actually belonged to Cascade.

77.     In June 2024, Plaintiff's attorney contacted Cascade, who reaffirmed the information stated in the immediately preceding paragraph.

20

78.     The entities named as defendants in this complaint are some of the most recent credit identity theft and debt collection scam operators to acquire stolen information related to Plaintiff's time-barred and extinguished account as well as Plaintiff's personal and financial information, and use that stolen information to contact and falsely threaten Plaintiff with litigation, prosecution and other adverse consequences, in efforts to coerce the payment of money from Plaintiff.

79.     On June 10, 2024, at approximately 4:37 p.m., defendants' employee and agent, known as a "point caller," placed a call from telephone number 989-206-9285 to Plaintiff's residential telephone with the area code 989, and spoke with Plaintiff. In the ensuing conversation, Plaintiff's employee and agent stated that he was calling from"Process Service Dispatch" and that Plaintiff was scheduled to be served that day with "Certified Legal Documents" in "Case Number HRT937-24-002129."

80.     On June 12, 2024, a return call was made to telephone number 989-206-9285, which was answered by defendants' employee and agent, who identified himself "Nick Vega," an "arbitrator," in defendants' "Arbitration Department," at the "Law Firm of Hersch & Associates." Mr. Vega provided his direct telephone line as 213-329-3258. In the ensuing conversation, defendants' employee made the following statements:

a)     The call was being recorded.

b)     Plaintiff owed $4,957.59 on the Santander account.

c)     The Law Office of Hersch & Associates had filed a lawsuit against Plaintiff to collect the debt.

d)     Plaintiff was being sued for civil breach of contract and also was being

criminally charged for "conditional fraud."

e)     Plaintiff was scheduled to be served that day.

f)     Plaintiff would be required to appear in court two weeks after being served.

g)     The amount owed by Plaintiff was being increased to $6,900.00 because of the addition of court costs and attorney fees.

h)     They are placing a lien on your property and take your property.

i)     They are placing a lien on your bank accounts and your other vehicles.

j)     They are going to garnish your wages.

k)     The Court is going to place a judgment on your credit and restrict your drivers license for ten years.

l)      If you want to avoid all of these adverse consequences, I will arbitrate for you with the attorneys and arrange a settlement.

m)     The attorneys are willing to settle for $4,908.00, with a payment today June 12, 2024 of $250.00, and a final payment on June 20, 2024 of $4,708.00.

81.     On June 12, 2024, in response to defendants' false threats of litigation, prosecution, judgments, liens, judgments, and other adverse consequences, Plaintiff authorized a payment to defendants by debit card in the amount of $250.00. According to the debit card's issuing bank, the payment was deposited into defendants' Merchant Account maintained in the name of "MPM Processing," telephone number 844-262-9665, located in Upland, California. The payment posted on June 13, 2024.

82.     Defendants' repeated use of the described Merchant Account to receive credit card and debit card payments from consumers defrauded by defendants violated the terms of the agreement between defendants and defendants' acquiring bank and defendants' ISO and payment processor, violated the terms of the agreements between defendants and Visa and MasterCard, and disqualifies defendants from maintaining a Merchant Account and accessing the banking system.

83.     On June 12, 2024, defendants sent an email to Plaintiff through SignNow using the email address clientservices@corporatelegalgroup.com. Attached to the email was a one-page document on the letterhead of MPM PROCESSING, captioned "Settlement Agreement - HRT937-24-002129," falsely stating that Plaintiff owed $4,908.00 in connection with the Santander account. A copy of the email and document are attached to this complaint as Exhibit B.

84.     The above-described threats and representations made by defendants and defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats of litigation and prosecution, intimidation, and unlawful harassment, often times on debts that are not owed, time-barred and/or counterfeit, and through the use of consumers' stolen account and personal information.

85.     Defendants have regularly, repeatedly and falsely communicated to Plaintiff and other consumers that defendants are lawyers, and have repeatedly engaged in the unauthorized practice of law, a crime. Cal. Bus. & Prof. Code § 6126 (West 2021). It is an express violation of

the FDCPA to commit a crime in connection with the collection of any debt.

86.    Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

87.    Defendants and their employees and agents falsely represented and inflated the amount of Plaintiff's alleged debt.

88.    Defendants and their employees and agents falsely represented that Plaintiff owed a debt that is not owed.

89.    Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

90.    Defendants and their employees and agents falsely represented that they were retained by the owner of the account to collect the alleged debt.

91.    Defendants and their employees and agents wrongfully obtained and wrongfully used personal information regarding Plaintiff, for the purpose of communicating with Plaintiff and Plaintiff's relatives, in an effort to coerce the payment of money from Plaintiff.

92.    Defendants and their employees and agents falsely represented that they are lawyers and a law firm.

93.    Defendants and their employees and agents falsely represented that they are lawyers and a law firm, retained by Santander, to file a debt collection lawsuit against Plaintiff.

94.    Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

95.    Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

96.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Plaintiff to collect the alleged debt.

97.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Plaintiff to collect the alleged debt.

98.     Defendants and their employees and agents wrongfully threatened to file a lawsuit against Plaintiff to collect an alleged debt that is past the statute of limitations and known to be time-barred debt.

99.     Defendants did not intend to file a lawsuit against Plaintiff in any court in efforts to collect the alleged debt.

100.    No defendant has ever filed any lawsuit in any court to collect any debt from any consumer.

101.    Defendants and their employees and agents falsely represented and falsely implied that a judgment would be entered against Plaintiff.

102.    Defendants and their employees and agents falsely represented and falsely implied that the courts were involved in defendants' efforts to collect the alleged debt from Plaintiff.

103.    Defendants and their employees and agents falsely represented and falsely implied that liens were going to be placed against Plaintiff's real property, motor vehicles, and other assets.

104.    Defendants and their employees and agents falsely represented and falsely implied that defendants intended to take Plaintiff's residence.

105.    Defendants and their employees and agents falsely represented and falsely implied that a process server was being dispatched to Plaintiff's residence and place of employment to

serve Plaintiff with a summons to appear in court.

106.    Defendants and their employees and agents falsely represented and falsely implied that Plaintiff had committed a crime.

107.    Defendants and their employees and agents falsely represented and falsely implied that Plaintiff had committed a crime and was in the process of being prosecuted.

108.    Defendants and their employees and agents falsely represented and falsely implied that Plaintiff would be required to appear in court to answer to her supposed fraud and other crimes.

109.    The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

110.    The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

111.    The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

112.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

113.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

114.    The FDCPA states that it is unlawful for a debt collector to make any false

representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

115.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

116.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

117.    The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

118.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

119.    The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

120.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

121.    The FDCPA states that it is unlawful for a debt collector to communicate in a

communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

122.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

123.    The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

124.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

125.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

126.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (8), (9), (10), (11), (13) and (14), and 1692f 169f(1).

127.    The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

128.    Defendants and their employees and agents failed to timely send to Plaintiff a notice containing the information required by 15 U.S.C. § 1692g(a).

129.    Defendants and their employees and agents violated the Identity Theft and

Assumption Deterrence Act, 18 U.S.C. § 1028, in their efforts to coerce the payment of money from Plaintiff. It is an express violation of the FDCPA to commit a crime in connection with efforts to collect an alleged debt.

130.    Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

131.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

132.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

133.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

134.    In connection with efforts to collect an alleged debt from Plaintiff, defendants obtained and used personal information regarding Plaintiff and Plaintiff's relatives from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

135.    The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

136.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

137.    The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

138.    The DPPA also states:

> "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

139.    The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be

liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

140.   The DPPA enumerates the only "permissible uses" for which personal information may be obtained. 18 U.S.C. § 2721(b).

141.   Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Plaintiff and Plaintiff's relatives.

142.   Defendants used the database to obtain, disclose and use personal information regarding Plaintiff and Plaintiff's relatives.

143.   Defendants made a false representation to the provider of the database to obtain personal information regarding Plaintiff and Plaintiff's relatives from motor vehicle records.

144.   Alternatively, the entity that obtained Plaintiff and Plaintiff's relatives personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain the personal information.

145.   It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723. It is an express violation of the FDCPA to commit a crime in connection with the collection of any debt.

146.   Defendants knowingly obtained, disclosed and used Plaintiff and Plaintiff's relatives information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

147.   No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Plaintiff and Plaintiff's relatives personal information obtained from the database.

148.   No defendant had Plaintiff and Plaintiff's relatives consent, permission,

authorization or waiver to obtain the personal information from the database.

149.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

150.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

151.    Defendants, and their employees and agents, each have intentionally and wilfully violated the DPPA.

152.    Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

153.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, Plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which Plaintiff should be compensated in an amount to be established at trial.

## V.      Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

154.    Plaintiff incorporates the foregoing paragraphs by reference.

155.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)      Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with

the collection of a debt;

b)     Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading

representations and means in connection with the collection or attempted

collection of a debt;

c)     Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means

to collect or attempt to collect a debt from Plaintiff; and

d)     Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** Plaintiff seeks judgment against each defendant for:

a)     Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)     Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

156.     Plaintiff incorporates the foregoing paragraphs by reference.

157.     Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** Plaintiff seeks judgment against each defendant for:

a)     Actual damages, but not less than liquidated damages in the amount of $2,500.00,

pursuant to 18 U.S.C. § 2724(b)(1);

b)     Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)     Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)     An injunction prohibiting defendants from further obtaining or using Plaintiff's

personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)     An order requiring defendants to provide Plaintiff with the original and all copies

of any and all documents of any kind that contain any of Plaintiff's personal

information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)      An injunction prohibiting defendants from disseminating Plaintiff's personal

information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

### Count 3 – Michigan Regulation of Collection Practices Act

158.    Plaintiff incorporates the foregoing paragraphs by reference.

159.    Each defendant has violated the MRCPA.  Each defendant's violations of the

MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a

misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the

purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication

with a debtor the following: (i) the legal status of a legal action being taken or

threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the

nonpayment of a debt will result in the debtor's arrest or imprisonment, or the

seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or

abusive method to collect a debt; and

f)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure

designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

160.    Plaintiff incorporates the foregoing paragraphs by reference.

161.    Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure

designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).


Dated: June 25, 2024                        /s/ Phillip C. Rogers
                                            Phillip C. Rogers (P34356)
                                            Attorney for Plaintiff
                                            2851 Charlevoix Dr. SE, Ste. 205
                                            Grand Rapids, MI 49546-7090
                                            (616) 776-1176
                                            ConsumerLawyer@aol.com